# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: November 22, 2021

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
JODI RODRIGUEZ,                    *      No. 18-459V
                                   *
            Petitioner,            *      Special Master Sanders
                                   *
v.                                 *
                                   *
SECRETARY OF HEALTH                *      Fact Finding; Onset of Injury;
AND HUMAN SERVICES,                *      Location of Vaccination on Body;
                                   *      Influenza ("Flu") Vaccine;
                                   *      Shoulder Injury Related to Vaccine
            Respondent.            *      Administration ("SIRVA")
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

*Diana L. Stadelnikas,* Maglio Christopher & Toale, PA, Sarasota, FL, for Petitioner.
*Debra A. Filteau Begley,* U.S. Department of Justice, Washington, DC, for Respondent.

## FACT RULING[1]

On March 28, 2018, Jodi Mickelson[2] ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[3] Petitioner "request[ed] compensation under [the Program] for injuries resulting from adverse effects of a vaccination or vaccinations, covered by 42 U.S.C. § 300aa-10, *et seq.*" Pet. at 1, ECF No. 1. In her petition, Petitioner noted that, "[o]n October 14, 2016, Petitioner received the [i]nfluenza vaccine[.]" *Id.* ¶ 1. She continued that "[o]n October 25, 2016, [she] presented to [her doctor] with complaints of right shoulder pain, since her flu vaccination." *Id.* ¶ 2. Respondent filed his Rule 4(c) report on July 1, 2019, and argued that "this case is not appropriate for compensation under the terms of the Act." Resp't's Report at 1, ECF No. 28. On September 23, 2019, Petitioner filed a motion for finding of fact "regarding Petitioner's onset of her shoulder injury related to vaccine administration and location of the administration based solely on the record evidence . . . ." Pet'r's Mot. at 2, ECF No. 32. For the

---

[1] This fact ruling shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted fact ruling. If, upon review, I agree that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] Petitioner filed a motion to recaption case on April 12, 2021, due to her marriage on December 20, 2019, and subsequent name change to Jodi Rodriguez. ECF 41 at 1. I granted Petitioner's motion. Order, ECF No. 43.

[3] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act," "the Act," or "the Program"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

reasons discussed herein, I find that Petitioner has provided preponderant evidence that her right shoulder pain began four days post vaccination. Petitioner has also provided preponderant evidence that her October 14, 2016 flu vaccine was administered in her right shoulder.

## I.    Procedural History

Petitioner filed her petition on March 28, 2018. *See* Pet. She then filed medical records, including a vaccination record, an affidavit, and a statement of completion on April 9, 2018. Pet'r's Exs. 1–5, ECF No. 6; ECF No. 7. The parties participated in a status conference on May 7, 2018, and the chief special master ordered Respondent to file a status report indicating how he would like to proceed. Scheduling Order at 1, ECF No. 9. Respondent filed several status reports and requested additional documents. ECF Nos. 10, 13, 15, 19. Petitioner filed additional medical records on April 8, 2019, along with a motion for an extension of time to file additional records. Pet'r's Exs. 6–7, ECF No. 21. On April 15, 2019, Petitioner filed a second affidavit and statement of completion. Pet'r's Ex. 8, ECF No. 23; ECF No. 24. Respondent filed his Rule 4(c) report on July 1, 2019. Resp't's Report. The chief special master ordered Petitioner to file "a motion for fact ruling as to onset and location of vaccination by Thursday, September 19, 2019." Scheduling Order at 1, ECF No. 29. Petitioner was also ordered to file "any additional evidence she wishes to have considered." *Id.* After filing a motion for extension of time, Petitioner filed her motion, along with an affidavit of Rachel Green on September 23, 2019. ECF Nos. 31–32; Pet'r's Ex. 9, ECF No. 33-2. Respondent filed a response to Petitioner's motion for fact ruling on November 14, 2019. Resp't's Resp., ECF No. 37. The case was reassigned to me on February 20, 2020. ECF No. 39. Petitioner filed a final round of medical records on March 9, 2021. Pet'r's Exs. 10–11, ECF No. 40.

Petitioner's motion for finding of fact specifically moves "the Court for a finding of fact regarding the Petitioner's onset of her shoulder injury following vaccination administration[.]" Pet'r's Mot. at 1. In his response, Respondent clarifies the scope of the findings, noting "this Court's July 18, 2019 Order [wherein P]etitioner was ordered to file a motion for a factual ruling on two issues: 1) when [P]etitioner's alleged SIRVA injury began, and 2) whether [P]etitioner received a flu vaccine in her right shoulder on October 14, 2016." Resp't's Resp. at 1. This matter is ripe for review.

## II.    Summary of Relevant Evidence

### a.   Medical Records

Petitioner's medical history reveals a prior history of vaccinations in her right and left arms. Petitioner submitted records for: a flu vaccination dated October 14, 2011, administered in her left deltoid, Pet'r's Ex. 2 at 223, ECF No. 6-3; a December 3, 2014 flu vaccination, in her right deltoid, *id.* at 213; an October 15, 2015 flu vaccination, in her right deltoid, *id.* at 212; and the record for the flu vaccination at issue in this case, administered on October 14, 2016, in her left deltoid. *Id.* at 59. The vaccination records that Petitioner provided were all generated by Iowa Specialty Hospital, save the 2011 record, which bears a Wright Medical Center[4] heading. All of the records

---

[4] Wright Medical Center is affiliated with Iowa Specialty Hospital. https://www.iowaspecialtyhospital.com/.

from Iowa Specialty Hospital and affiliates are consent forms with the same format, including spaces to fill in the date of vaccination, and the printed name, signature, and date of birth of the vaccine recipient. *See* Pet'r's Ex. 2 at 59, 212–13, 223. There are also precautionary questions that must be filled out by the vaccine recipient, and an area for the administering nurse to complete that details which arm is injected, the vaccine lot number, and the vaccine's expiration date. *See id.* All of these areas were filled out by hand. *See id.*

Petitioner also filed a Mercy Family Clinic Immunization History Report. Pet'r's Ex. 1, ECF No. 6-2. The Mercy report lists several vaccinations that Petitioner received dating from May 6, 2005 through the October 14, 2016 flu vaccine at issue in this case. *Id.* Information contained in the report includes the vaccine lot number, the location of vaccination on body, and the provider of the information. *Id.* This report notes that Petitioner's 2016 flu vaccine was a full-dose booster. *Id.* The 2016 flu vaccine notation also lists the provider of the information contained in the record as Iowa Specialty Hospital, and it lists the same lot number as the Iowa Specialty Hospital consent form filing. *See id*; Pet'r's Ex. 2 at 59. The Mercy report, however, does not list the same location of Petitioner's 2016 vaccination, and instead notes "RD[,]" indicating the injection was in the right deltoid. Pet'r's Ex. 1.

Petitioner filed medical records that document her treatment for pain post vaccination. On October 25, 2016, eleven days post vaccination, Petitioner visited her primary care provider, Dr. Michael Whitters, and complained of right shoulder pain. Pet'r's Ex. 2 at 25. The record notes, "patient presents for pain in right shoulder, worse since [f]lu vaccine.[5]" *Id.* at 26. On exam, Petitioner's "right shoulder [was] not [r]ed or hot," but she had "tenderness with ROM[.]" *Id.* at 28. Petitioner was diagnosed with right shoulder arthritis[6] and received a steroid injection. *Id.* at 28–29. Petitioner called Dr. Whitters's office on November 11, 2016, and stated "her shoulder still hurts really bad." *Id.* at 25. Petitioner noted that Dr. Whitters gave her a cortisone injection "because her flu shot was given too high." *Id.*

On November 17, 2016, Petitioner was seen by Kristina Johnson, an orthopedic physician's assistant ("PA"). *Id.* at 21. Petitioner reported that "she received her flu shot this fall, and several days after she got sharp pain. She went and was seen by Dr. Whitters who told her that her flu shot was given to [sic] high, and he gave her a cortisone injection on [October 14, 2016].[7]" *Id.* at 22. Petitioner stated that the cortisone injection worked for three days but that she then "continu[ed] to have pain shooting down her arm[.]" *Id.*

On December 16, 2016, Petitioner was seen again by PA Johnson. *Id.* at 20–21. PA Johnson noted that "[Petitioner] did inquire again about this being caused by the flu shot." *Id.* at 21. PA Johnson reported that she told Petitioner that PA Johnson "fe[lt] that is just of [sic] fluke that it happened that [sic] same time as her flu shot." *Id.* PA Johnson directed Petitioner to get an MRI. *Id.*

---

[5] There is no prior record that indicates or describes shoulder pain that pre-existed the vaccine.

[6] Arthritis is "inflammation of a joint." *Arthritis*, DORLAND'S MEDICAL DICTIONARY ONLINE [hereinafter "DORLAND'S"], https://www.dorlandonline.com (last visited Nov. 3, 2021).

[7] Based on Petitioner's other medical records, this date appears to be an error.

Petitioner's MRI was completed on December 20, 2016, and she reported to the technician that she experienced sharp pain in her right shoulder after she received her flu shot. *Id.* at 55. When asked to describe her pain and how and when it started on a screening form, Petitioner wrote, "[f]ront [s]houlder pain when moving[.] Started after a flu shot Oct. 14, 2016[.]" *Id.* at 56. The MRI revealed mild tendonitis[8] and bone contusion. *Id.* at 14. Petitioner suffered specifically from "bone bruising of the distal clavicle[9] and proximal humerus[]¹[10]" with "no soft tissue abnormalities noted." *Id.* at 19. Petitioner returned to her primary care physician on March 8, 2017, complaining of continued shoulder pain. *Id.* at 13–17.

On January 26, 2018, Petitioner presented to Dr. Andrea McLoughlin, a physician in Iowa Specialty Hospital's family practice, to establish care. Pet'r's Ex. 4 at 6, ECF No. 6-5. Petitioner reported that she had had "an aching pain in her shoulder" since "she received a flu shot a year ago." *Id.* Petitioner also noted new symptoms including a "shooting, burning pain" going from her shoulder through her hand and fingers, and expressed concern that her symptoms were progressing. *Id.* Dr. McLoughlin suggested that Petitioner's symptoms "seem more nerve related than joint related[]" and provided a referral for nerve conduction studies. *See id.* at 9.

On January 31, 2018, Petitioner presented for a neurological consultation with Dr. Anu Baweja, following complaints of "pain in her right anterior shoulder that radiates down to her medial elbow and then into the first [three] digits of her right hand." Pet'r's Ex. 3 at 2, ECF No. 6-4. Petitioner also reported "paresthesias[11] in the right hand and arm." *Id.* Petitioner denied shoulder injury and stated "[s]he thinks all of these symptoms started [four] days after a flu shot about a year ago." *Id.* A detailed EMG nerve conduction study was performed and revealed no evidence of carpal tunnel syndrome,[12] ulnar neuropathy[13] at either wrist or elbow, cervical

---

[8] Tendonitis, or tendinitis, is "inflammation of tendons and of tendon-muscle attachments[.]" *Tendinitis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). A tendon "a fibrous cord of connective tissue by which a muscle is attached[.]" *Tendon*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[9] The clavicle, or collar bone, is "a long bone[] . . . that articulates with the sternum and scapula, forming the anterior portion of the pectoral girdle on either side[.]" *Clavicle*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[10] The humerus is "the long bone of the arm that articulates with the scapula at the shoulder and with the radius and ulna at the elbow[.]" *Humerus*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[11] Paresthesias are "abnormal touch sensation[s], such as burning, prickling, or formication, often in the absence of an external stimulus." *Paresthesia*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[12] Carpal tunnel syndrome is "an entrapment neuropathy characterized by pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." Carpal Tunnel Syndrome, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). Entrapment neuropathies are "neuropathies, often overuse injuries, in which a peripheral nerve is injured by compression in its course through a fibrous or osseofibrous tunnel or at a point where it abruptly changes its course through deep fascia over a fibrous or muscular band." *Entrapment Neuropathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[13] Ulnar neuropathy refers to neuropathy of the ulnar nerve. "Those in the elbow region are usually entrapment neuropathies [ ]; those in the wrist region may cause only muscle weakness in the hand or weakness accompanied by sensory deficits in the areas of the little finger." *Ulnar Neuropathy*,

radiculopathy,[14] or brachial plexopathy.[15] *Id.* at 5. Dr. Baweja noted in her assessment that Petitioner's symptoms "are of unclear etiology." *Id.* She also noted that "[Petitioner's] shoulder pain and weakness is from the infraspinatus tendinopathy[16] seen in her shoulder MRI." *Id.* EMG results notwithstanding, Dr. Baweja remained concerned about carpal tunnel syndrome. *Id.*

On January 22, 2019, Petitioner presented to Dr. Pierre Bernard, a family medicine practitioner, at McFarland Clinic for "chronic right anterior shoulder pain with radiation down her right arm and involving her first [three] fingers, with intermittent tingling and numbness." Pet'r's Ex. 7 at 66, ECF No. 21-3. Petitioner "report[ed] developing symptoms shortly after a flu vaccine when living in Clarion in 2016." *Id.* Petitioner stated that her pain had worsened over the past few months. *Id.* On January 31, 2019, Petitioner visited Dr. Bryan Warme, an orthopedist, on referral from Dr. Bernard "for peculiar right upper extremity symptoms." *Id.* at 71. Dr. Warme noted that "[Petitioner] had a flu shot back in 2016 up in Clarion and [four] days after that, she has had a presentation of shoulder pain with radicular symptoms going medially and then into the thumb, index, and long finger." *Id.* Dr. Warme thought that Petitioner's problems were outside of his area of expertise. *Id.* He did not reach a diagnosis but asked Petitioner to check if she had a family history of Raynaud's syndrome.[17] *Id.* He continued that "[t]he only other thing [he could] think of is potentially some type of thoracic outlet[18] issue as per report, her previous shoulder workup has

DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). The ulnar nerve is distributed through various parts of the hands, forearms, and elbows. *See Nervus Ulnaris*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[14] Cervical radiculopathy is "radiculopathy of cervical nerve roots, often with neck or shoulder pain[.]" *Cervical Radiculopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). Radiculopathy refers to "disease of the nerve roots, such as from inflammation or impingement by a tumor or bony spur." *Radiculopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). Cervical "pertain[s] to the neck." *Cervical*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[15] Brachial plexopathy is "any neuropathy of the brachial plexus[.]" *Brachial plexopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). Brachial "pertain[s] to the upper limb[,]" and plexus refers to "a network of lymphatic vessels, nerves, or veins." *Brachial*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021); *Plexus*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[16] The infraspinatus muscle begins in the "infraspinous fossa of scapula[,] which is "the flat, triangular bone in the back of the shoulder[.]" *Musculus infraspinatus*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021); *Scapula*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021). Tendinopathy refers to "any pathologic condition of a tendon. *Tendinopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

[17] Reynaud disease is "a primary or idiopathic vascular disorder characterized by bilateral attacks of Raynaud phenomenon[,]" which is "intermittent bilateral ischemia of the fingers, toes, and sometimes ears and nose, with severe pallor and often paresthesias and pain, usually brought on by cold or emotional stimuli and relieved by heat[.]" *Raynaud Disease*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 10, 2021); *Raynaud Phenomenon*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 10, 2021).

[18] The thoracic outlet, or inferior thoracic aperture, is "the lower opening of the thoracic skeleton into the thoracic cavity." *Apertura Inferior Thoracis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 10, 2021). Thoracic "pertain[s] to . . . the thorax (chest)." *Thoracic*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 10, 2021).

all been negative and she has not responded to injections in the shoulder which would suggest this is not a shoulder problem primarily." *Id.* at 71–72. He noted that Petitioner's "shoulder examination [was] benign." *Id.* at 72.[19]

### b.  Affidavits

Petitioner filed two affidavits in this case. The first affidavit generically attests to the requirements for filing a claim in the Program. *See* Pet'r's Ex. 5, ECF No. 6-6. Petitioner stated that she received a vaccine covered by the Program and that it was administered in the United States. *Id.* ¶¶ 1–2. She continued that "as a result of vaccination, [she] sustained a [SIRVA,]" and that injury "has lasted beyond [six] months." *Id.* ¶ 3.

Petitioner's second affidavit relates to Respondent's assertion that she had a pre-existing injury. Pet'r's Ex. 8, ECF No. 23-2. Petitioner stated that she "did not receive any care for [her] right shoulder prior to the vaccine on October 14, 2016." *Id.* ¶ 1. She provided the details surrounding a minor hand injury she suffered three years prior to vaccination. *Id.* ¶ 2–6. Petitioner noted that she wore a brace and took over-the-counter medication until the pain resolved. *Id.* ¶ 6.

Rachel Green, Petitioner's colleague, also submitted an affidavit on Petitioner's behalf. Pet'r's Ex. 9, ECF No. 33-2. Ms. Green stated that she "personally observed" Petitioner's difficulties with her shoulder "[i]n the time following the shot[.]" *Id.* However, Ms. Green did not provide any information related to whether Petitioner was vaccinated in the right shoulder. *Id.* Neither did she provide any information related to the onset of Petitioner's pain, except to say it occurred in 2016 after Petitioner's vaccination. *Id.*

### III.   Applicable Legal Standard

To receive compensation under the Vaccine Act, Petitioner must demonstrate either that: (1) she suffered a "Table injury" by receiving a covered vaccine and subsequently developing a listed injury within the time frame prescribed by the Vaccine Injury Table set forth at 42 U.S.C. § 300aa-14, as amended by 42 C.F.R. § 100.3; or (2) that she suffered an "off-Table injury," one not listed on the Table as a result of her receipt of a covered vaccine. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C); *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1319–20 (Fed. Cir. 2006).

The Vaccine Injury Table considers a SIRVA a presumptive injury for the flu vaccine if the first symptom or manifestation of onset of the illness occurs within forty-eight hours of an intramuscular vaccine administration. *See* 42 C.F.R. § 100.3(a)(XIV). The Qualifications and Aids to Interpretation ("QAI") further specify:

---

[19] While I have reviewed all of the records filed in this case, I have addressed only the medical records I have deemed relevant to this Fact Ruling. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

A vaccine recipient shall be considered to have suffered a SIRVA if such recipient manifests all of the following:

    i)    No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

    ii)    Pain occurs within the specified time-frame;

    iii)    Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

    iv)    No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10). If, Petitioner is unable to succeed on a Table claim, Petitioner may, alternatively, prove that her injury was caused-in-fact by a Table vaccine. In order to succeed on a theory of causation-in-fact, Petitioner would have to show:

by preponderant evidence that the vaccination brought about [the] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

See *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. § 11(c)(2). The special master is required to consider "all [] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as "the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." § 13(b)(1)(A). The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove her claim by a preponderance of the evidence. A special master must consider the record as a whole, but is not bound by any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1).

In Program cases, contemporaneous medical records and the opinions of treating physicians are favored. *Capizzano*, 440 F.3d at 1326 (citing *Althen*, 418 F.3d at 1280). This is because "treating physicians are likely to be in the best position to determine whether 'a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury.'" *Id.* In

addition, "[m]edical records, in general, warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Hum. Servs.*, 933 F.2d 1525, 1528 (Fed. Cir. 1993). Indeed, contemporaneous medical records are ordinarily to be given significant weight due to the fact that "the records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Id.* However, there is no "presumption that medical records are accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (finding that a special master must consider the context of a medical encounter before concluding that it constitutes evidence regarding the absence of a condition.). While a special master must consider these opinions and records, they are not "binding on the special master or court." 42 U.S.C. § 300aa-13(b)(1). Rather, when "evaluating the weight to be afforded to any such . . . [evidence], the special master . . . shall consider the entire record . . . ." *Id.*

For cases alleging a condition found in the Vaccine Injury Table, special masters may find when a first symptom appeared, despite the lack of a notation in a contemporaneous medical record. 42 U.S.C. § 300aa-13(b)(2). By extension, special masters may engage in similar fact-finding for cases alleging an off-Table injury. In such cases, special masters are expected to consider whether medical records are accurate and complete.

In determining the accuracy and completeness of medical records, special masters will consider various explanations for inconsistencies between contemporaneously created medical records and later given testimony. The Court of Federal Claims has identified four such explanations for explaining inconsistencies: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014).

## IV.   Discussion

### a.   Shoulder Injury Onset

Petitioner does not specify exactly when her shoulder injury first began in her petition, her first or second affidavit, or her motion. Indeed, she moves for a finding "that the onset of her right shoulder injury occurred within the immediate days following vaccination on October 14, 2016 . . . ." Pet'r's Mot. at 6. In support of her motion, Petitioner points to medical records, which consistently note that her pain began after vaccination. *Id.* at 4; Pet'r's Ex. 2 at 22–26, 55–56; Pet'r's Ex. 3 at 2. There is only one record, however, that identifies the date of the onset of her pain with any specificity. Notes from a January 31, 2018 visit with a neurologist state that Petitioner "thinks all of these symptoms started [four] days after a flu shot about a year ago." Pet'r's Ex. 3 at 2. This is the first time Petitioner assigns a date for the onset of her shoulder pain. She reported it began four days post vaccination, which would have been October 18, 2016. However, she also stated the pain started "about a year ago" (possibly in reference to the doctor's visit), and that would have been in January of 2017. *See* Pet'r's Ex. 4 at 6. It is unclear. Respondent,

however, does not dispute that Petitioner was consistent in stating that her pain began after her vaccination on October 14, 2016. Given the amount of time that had passed, it is reasonable that Petitioner was imprecise when she reported during her 2018 neurology visit that the vaccine was administered "about a year ago." I therefore find there is preponderant evidence in the record that Petitioner's pain began four days post vaccination, on October 18, 2016.

### b.  Location of Vaccination (Right or Left Shoulder)

Petitioner also does not unequivocally state that her vaccine was administered in her right shoulder, either in her petition, affidavits, or motion. However, all of her medical records note that that she had pain in her right shoulder soon after her vaccination. There is nothing in her medical history or any of the affidavits that reveal an alternative cause for right shoulder pain occurring four days after her vaccination. Petitioner has also consistently associated her right shoulder pain with her vaccination to her medical providers and in her case filings. It is logical and reasonable to conclude that Petitioner is alleging vaccine injury following vaccination in the arm that is injured.

It is notable that Petitioner relies on the consent forms provided by Iowa Specialty Hospital for all of her vaccinations, except for the one in question, for which she relies on the Mercy report. All of the Iowa Specialty forms are signed and dated by Petitioner, and the shoulder that was injected is also identified by handwriting in the nurse's portion of the form. *See* Pet'r's Ex. 2 at 59, 212–13, 223. Petitioner contends, however, that "it is not clear who completed [the nurse's] portion of the form, when it was completed and whether it was actually the nurse who administered the vaccination." Pet'r's Mot. at 2. The nurse's portion of the form is not dated, and there is no way to determine when this part of the form was filled out. *See* Pet'r's Ex. 2 at 59. The Iowa Specialty form reflects that Petitioner received the October 14, 2016 flu vaccine at issue in her left deltoid. *Id.* In comparison, the Mercy report lists the vaccination location as the right deltoid. Pet'r's Ex. 1. The Mercy report is a typed summary that is not signed or dated by anyone. It identifies Iowa Specialty Hospital as the information source, and it is curious that the two records are inconsistent. Neither of the relevant portions of these documents clearly reveal the date of creation, and neither are definitive in this case. The Mercy record does, however, support the other testimonial evidence in the medical history. This is truly a case where the totality of the record must be considered to form a complete picture of Petitioner's experience and chronology. Petitioner consistently complained of right shoulder injury and attributed said injury to her vaccine.  Therefore, I find that Petitioner has satisfied her burden to establish it more likely than not that her October 14, 2016 flu vaccine was administered in her right shoulder.

### V.   Conclusion

Based on the above reasoning, I find that Petitioner has provided evidence establishing it more likely than not that she experienced right shoulder pain four days post vaccination and that she received her vaccine in her right shoulder. Petitioner has fourteen (14) days from the filing of this ruling to file a status report indicating how she wishes to proceed.

**IT IS SO ORDERED.**

9

<u>s/Herbrina D. Sanders</u>
Herbrina D. Sanders
Special Master